3-10-0618. People of the State of Illinois, I believe by Robert Hanson v. Leon Franklin. Appellate by Brian Rayna. Mr. Rayna? Have we got that pronounced correctly? Rayna. That's correct, yes. Thank you. Good morning, Your Honors. Counsel, may it please the Court. My name is Brian Rayna, Office of the State Appellate Defender, and today I'll be representing the appellant, Leon Franklin. Your Honors, we raised four issues in the opening brief, and with your permission today I would like to discuss issues one and three, those being that the trial court misinstructed Franklin's jury as to the definition of reasonable doubt, and that it failed to conduct an adequate crankle inquiry. I'd also be happy to take questions on any of the other issues, and would just like to reserve a few minutes for rebuttal. You have five minutes. Five minutes? Thank you, Your Honor. No reservation needed here. Okay, perfect. With respect to argument one, reasonable doubt is not an easy concept to understand, and it's more difficult to explain. For this reason, Illinois has had a long-standing rule that reasonable doubt is self-defining and needs no further elaboration. In this case, the judge ignored this rule and did something he did not need to do that caused harm. While Franklin's jury expressed no confusion as to the reasonable doubt standard, the trial judge injected confusion into the proceedings by telling them, Reasonable doubt is what each of you, individually and collectively, as 12 of you, believe is beyond a reasonable doubt. The First District Appellate Court has already decided the issue in front of this court today. If people determine, the court found that it was likely the jury applied a constitutionally efficient standard when they were told to collectively determine what reasonable doubt is. Telling a jury to collectively determine the meaning of reasonable doubt indicates the jury should invent a standard of proof. This undermines the objective reasonable doubt standard and distracts the jury from performing its duty as the finder of fact. In this case, the judge's comment that the jury was to individually and collectively determine what reasonable doubt meant drove the confusion beyond that of Terman. It encouraged the jurors to formulate 12 distinct subjective standards and negotiate those down to the lowest common denominator. We can be certain the jury applied the wrong standard in this case because, in closing arguments, the prosecutor instructed them to. The prosecutor told the jury to apply the definitions applied by the trial judge. The state will argue that Terman is not applicable because, in this case, the judge was not asked to define reasonable doubt. This only makes his erroneous instruction more improper. Without a question from the jury, there is just no reason for the judge to tread upon this delicate area of law. The judge's instruction contradicted the committee notes and IPI 2.05, recommending that no instruction be given to finding reasonable doubt. This is a plain-air question, is it not? Yes, Your Honor. And would you agree it's the second-pronged plain-air issue? Yes, Your Honor. And after Victor v. Nebraska, the United States Supreme Court case, how would this be a systemic or structural error so grave that it would be plain-air? Well, in Victor, as well as a number of federal cases, U.S. v. Hernandez and Sullivan v. Louisiana, the Court has consistently held that an erroneous definition of reasonable doubt is not subject to harmless error analysis. It's one of the most fundamental concepts in our criminal justice system. Victor only helps our argument because it just says if the judge provides a definition of reasonable doubt, it has to be correct. And here it wasn't. How many times do you think the Supreme Court has ever reversed a case by the definition of reasonable doubt? How many times? About once, right? That I'm aware of, yes. But I believe the reason for that would be that, particularly in Illinois, where it has been a long-standing rule that a judge is not supposed to define reasonable doubt, most judges adhere to this rule. And reasonable doubt doesn't go misdefined in many cases. The Supreme Court hasn't addressed this issue. Our Supreme Court hasn't addressed the issue since Victor, right? That's correct. Since Victor came out. Our cases are much older cases, correct? Yes, that's right. And Terman, the first district appellate court case being the most recent, and the Supreme Court did deny the state's PLA in that case. I mean, we don't know very much of Terman because they don't say much except for what the judge said, right? As far as the facts. Well, Terman has a fairly lengthy discussion of the facts because it actually reversed the conviction under both prompts of the plain error doctrine. But the discussion of whether this was a fundamental error was very short because it's very clear it is. When the jury does not apply the reasonable doubt standard, it is a violation of due process and it harms the criminal justice system in this particular case and collectively. If there are no further questions on this issue, I will move on to issue three regarding the Franklin inquiry. Prior to sentencing, Franklin filed a pro se motion for a new trial alleging that his attorney was ineffective for arresting this case without presenting all the evidence. He then clarified for the trial court that counsel knew of Portia Sturdivant and two other witnesses that he did not investigate or interview. The court asked Franklin about Portia but did not follow up with any questions about these two other witnesses. The state, in fact, concedes that if Franklin was not talking about two particular witnesses, that this case should go back for a remand on a Franklin inquiry. The state also speculates that the court didn't ask these questions because it knew that Leon was talking about Shawnice Miller and Kayla Kelly. The simple truth is the court could not have known because it never asked. It never said, Leon, who are you talking about? The basic requirement of a Franklin inquiry is for the court to ascertain a factual basis of the claim so that it can determine if it has merit. And that simply wasn't done here. Even if the court thought it knew, it should have asked about the substance of the testimony. Those questions are also necessary to determine if his claim would have had merit. Because the court's inquiry was deficient, we would ask that if you don't remand Franklin's case based on the reasonable doubt argument, that you would remand for a new Franklin inquiry. Thank you very much. Thank you very much, Mr. Mayor. And you will have, as I said, five minutes. Thank you, Your Honor. Mr. Hanson? Good morning, Your Honors. May it please the court, counsel. As to the first argument, we urge you, and I won't be very lengthy here because I think I responded to everything medically in my brief. We urge you to consider this was just a judge's statement to prospective jurors, not in response to a jury question. What the judge said was very fair. There is zero evidence in the record of any kind of confusion. And, Your Honors, we have jury trials. We're a big believer in a jury system. A jury, almost by definition, must not be so delicate an instrument of justice as to be harmed by something as innocuous as what the judge said here and the prosecutor referred to in closing argument. The prosecutor going out of his way to be fair saying, hey, reasonable doubt isn't what I tell you it is. Reasonable doubt isn't what the defense tells you it is. Reasonable doubt is what you people decide. And that, in essence, is correct. Justice Carter referred to the U.S. Supreme Court Victor v. Nebraska case, and that case said the U.S. Constitution neither prohibits a definition of reasonable doubt or requires it. There simply must be told, as the jury was here, all the appropriate IPI instructions were given, that the burden of proof beyond a reasonable doubt. But we're talking about Illinois. I mean, there's a difference here, isn't there, between Illinois law and the federal law? That's not certainly made clear anywhere, Your Honor. There's no reason to think that Illinois would depart from the Victor v. Nebraska rationale in this regard. Well, that's not really what I'm speaking to. Doesn't Illinois prohibit any definition of reasonable doubt being given to a jury? Illinois says you're not to define reasonable doubt, and the judge didn't. He, in essence, what he said, reasonable doubt meant reasonable doubt, and then he added, it's what each of you individually and collectively, as 12 of you, believe is beyond a reasonable doubt. And even the Turman case said, you know, perhaps a proper instruction in this state of Illinois that, as you pointed out, says don't define reasonable doubt could be given to the effect of reasonable doubt means a doubt that is reasonable. Your logic is impeccable. Yeah. It means doubt that is reasonable, not any doubt. So in essence, as I point out, you know, a jury could maybe decide, with no more definition of this, the state must prove them guilty beyond any doubt. There's every bit as much reason to think this, a jury not instructed any more than Illinois allows, could make beyond a reasonable doubt mean beyond any doubt. And Turman says you can instruct a jury, reasonable doubt means a doubt that is reasonable and does not mean beyond any doubt. So Turman would, in essence, allow the jury to be told something considerably more unfavorable to the defendant than was done here, i.e., that it does not mean any doubt. Have I responded adequately here? Yeah, you have. Well, what if you could suggest or infer that what the judge said meant the jury wasn't supposed to follow the instruction that they find the defendant guilty beyond a reasonable doubt? They're supposed to do anything they make up individually. No, I think given the fact that it was said to prospective jurors, the judge is just boilerplate giving a background, telling the jurors, hey, you're the ones who decide whether or not there's been proof beyond a reasonable doubt. Historically, when Illinois has established this rule in the Supreme Court cases that have been cited by the appellate court cases, they've never indicated it was only grounded on the Illinois Constitution. They never have, no. And they just talk generally about sort of not even clearly due process concerns, right? Yes, it's extremely vague, and please look at my brief. I'm sure you have. You know, the whole point is this is the concept that every one of us in this country has been exposed to every day of our lives, and certainly people on the jury have seen television, etc. Everybody knows about reasonable doubt. The judge did nothing to indicate that reasonable doubt was something other than reasonable doubt, whatever that means. And I would add that Victor says you look to whether or not there's a reasonable likelihood the jury applied reasonable doubt unconstitutionally. No such likelihood here. You know, it's a practical matter. We all know that. There are a lot of programs and so forth, but when you have jury trials, juries frequently ask for the judge to define beyond a reasonable doubt, and judges who are aware of this law say you have your instructions, please follow them. Typically the next question from the jury is can we have a dictionary? That happens every now and then. And you don't let that happen either because you're going to look up the definition of reasonable and doubt. But jurors ask these questions all the time, and I know as a trial judge I was always afraid to say anything more than you have your instructions because then they would think that these people don't even know what beyond a reasonable doubt means. Well, reasonable doubt wouldn't be in the dictionary. Reasonable would. Yeah, yeah. They'd look reasonable and then they'd look up doubt. So it comes up, you know, when they're deciding a case and they have questions about it. So it's not like it's far-fetched that they, even though, despite all the years of programming and so forth. But at least in that case it indicates the jury's being troubled by it. When the jury asks, here, we're not dealing with that situation at all, and there is no indication here of anything approaching any kind of unfairness under what we're simply talking, a waived issue arguing only the second basis, not the closely balanced evidence prong, the fundamental error prong of the plain error rule. As to the second issue that counsel argued, and I too will limit myself to the arguments he has argued today, the record shows, you look at the record presented to you, that the witnesses at issue are that Ms. Miller and Ms. Kelly. The record shows the attorney was fully effective in not calling these purported witnesses, helping buttress the propriety of the Krankel hearing the judge made. If the judge determines the defendant's post-trial ineffectiveness claim lacks merit or pertains just to strategy, he may deny it under the Moore case, any case I mention to you is in my brief. The judge's inquiry here was adequate on these particular facts. Many times an inquiry such as this would not be an adequate Krankel inquiry, but it was in this case for the reasons I detailed in my brief. Briefly, the record shows the attorney was aware that Ms. Miller was with Ms. Sturdivant, who may have said the victim told her she had never had intercourse with the defendant, and he knew she was a potential witness, no question he was aware of Sturdivant. The record shows the attorney was aware Ms. Kelly was a cousin of Ms. Sturdivant, and may have letters written by the victim that nothing happened. The record shows he learned Kelly no longer had those letters, but wanted to talk to her. He asked for time to talk to these three women, the inference being he would do that. The inference being, which is troubling about your argument in this case, it's based on, in part, inferences drawn from the record, but nonetheless, this judge did nothing. He didn't ask any questions. He asked about Sturdivant. Yeah, he didn't ask about the identity of all the witnesses. He didn't, but in context, those had to be the witnesses, and the point is, judge, You said context, but he didn't make any inquiries. He made enough here, because an appellate court can affirm the trial judge for any reason, so long as he's correct, even if his reasoning was incorrect, and he clearly was correct in not giving, you know, going to the second step or more, presenting the defendant with counsel to argue ineffectiveness of his prior counsel. Based on the record here, the attorney asked for time to talk to them. He added Sturdivant and Miller to his witness list, indicating pretty clearly, though he did not indicate, did not add Kelly. He'd asked to speak to the three women. He then adds two of them and doesn't add the third. I think there's only one logical inference. I've talked to them. I'm thinking of the two. I don't like what the third one had to say. In the context of the record, the attorney knew of their evidence, and the only rational inference here is he decided not to call them. He said he decided not to call Sturdivant, as she could hurt the defendant's case. Miller was with Sturdivant to hear this ostensible statement, so the reasonable inference again is if A was going to hurt the case, B, who was with A, would also hurt the case. On the record, defense counsel clearly followed up on Miller and Kelly, of whom he knew and regarding whom he asked time to investigate. Miller and Ms. Kelly were obviously the two witnesses the defendant referred to in his motion, based on the facts here, and this is a rather unusual situation because the vast majority of time this would have been an inadequate crankle inquiry. But given the facts in this particular case, the record, the defendant asking, the defense counsel asking for time, and together with the principle that an appellate court will affirm a trial judge merely because he is correct even if for the wrong reasons, I think that covers our argument on that point. If you have any questions, I'll respond to them. Other than that, I'm good. Okay, I guess we have none. Thank you. Thank you, Mr. Hanson. And Mr. Rainer. Thank you, Your Honors. Just briefly, counsel indicated that somehow Terman would have allowed the judge to give a more unfavorable definition of reasonable doubt. That's simply not true. Terman states that if there was a question, which there was not in this case, so we have to presume that until the court elaborated on reasonable doubt, that the jury understood the reasonable doubt. There are three answers a judge can give. He can choose not to respond. He can say reasonable doubt is self-defining, or he can say reasonable doubt is doubt which is reasonable. Those are the answers that Terman allows. That was not done here. As far as what the violation is, just to reiterate, in Sullivan the court is very clear that this denies a defendant his due process right to a fair trial, and also because the reasonable doubt standard wasn't applied, there's no jury verdict because without proof based on conviction beyond reasonable doubt, there's not a valid verdict in this case. And finally, regarding counsel's argument with the Cranklin brief, it's just purely speculative. There's nothing in the record at all indicating that counsel spoke with these witnesses. He asked for a continuance to speak to two witnesses, and it was never mentioned again in the record. He did add Miller to the list of witnesses, but we don't know that those were the witnesses that Cranklin was talking about. We don't know whether he spoke to Kelly. We don't know if counsel so clearly had spoken to these witnesses, then they're probably not the two witnesses that Cranklin was saying were not interviewed. I mean, this is what a Cranklin inquiry is for, to determine the factual basis, and we just have no certainty here as to what Cranklin was talking about because the court asked no questions. Thank you, Your Honors. Thank you, Mr. Renner. And thank you both for your argument today. We will take this matter under advisement and get back to you within a short day.